Jonathan R. Marshall
**BAILEY GLASSER LLP**
580 California Street, 12th Floor
San Francisco, CA  94104
(304) 345-6555
jmarshall@baileyglasser.com

Bart D. Cohen (*pro hac vice forthcoming*)
Panida A. Anderson (*pro hac vice* forthcoming)
**BAILEY & GLASSER LLP**
1055 Thomas Jefferson Street NW, Suite 540
Washington, DC 20007
(202) 463-2101
bcohen@baileyglasser.com
panderson@baileyglasser.com

### IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORIAH WELCH, individually and on behalf of all others similarly situated,<br><br>  *Plaintiff*,<br><br>v.<br><br>ACTIVEHOURS, INC. d/b/a EARNIN and EARNIN US1, LLC,<br><br>  *Defendant*. | Case No. 3:25-cv-10091<br><br>**COMPLAINT**<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Coriah Welch, individually and on behalf of a class of similarly situated persons, brings this Class Action Complaint and alleges the following against Defendants ActiveHours, Inc. d/b/a EarnIn and EarnIn US1, LLC (collectively, "EarnIn" or "Defendants"), based upon personal knowledge with respect to Plaintiff, and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters.

**NATURE OF THE ACTION**

1.      Plaintiff brings this class action against EarnIn for its failure to properly secure Plaintiff's and Class Members' personally identifiable information and personal financial information ("PII").

2.      EarnIn failed to comply with industry standards to protect information systems that contain PII. Plaintiff seeks, among other things, orders requiring EarnIn to fully and accurately disclose the nature of the information that has been compromised and to adopt sufficient security practices and safeguards to prevent incidents like the disclosure (hereinafter referred to as the "Data Breach") in the future.

3.      EarnIn is a financial technology company. It operates an app-based service that allows users to access a portion of their earned wages before those wages are paid.

4.      On or around November 12, 2025, EarnIn reported to the Attorney General of Texas that an unauthorized third party accessed its computer network and obtained sensitive personal information. The exposed data includes its customers' full names, Social Security numbers, addresses, and dates of birth.

5.      As a financial services provider, EarnIn knowingly obtained sensitive PII and had a resulting duty to securely maintain that information in confidence. Plaintiff and Class Members would not have provided their PII to EarnIn if they had known that EarnIn would not ensure that it used adequate security measures.

6.      Plaintiff seeks to remedy these harms individually and on behalf of all other similarly situated individuals whose PII was exposed in the Data Breach. Plaintiff seeks remedies including compensation for time spent responding to the Data Breach and other types of harm, free credit monitoring and identity theft insurance, and injunctive relief, including substantial improvements to EarnIn's data security policies and practices.

**PARTIES**

7.      Plaintiff Coriah Welch is a resident of Los Angeles, California and has been an EarnIn customer both recently and at various times in past years. During the course of her

dealings with EarnIn, she has given EarnIn her Social Security number, along with other sensitive personal information.

8.    Defendant ActiveHours, Inc. d/b/a EarnIn is a Delaware corporation with its principal place of business at 391 San Antonio Road, 3rd Floor, Mountain View, CA 94040. Active Hours, Inc. registered to conduct business in the State of California in 2013.

9.    EarnIn US1 LLC is a subsidiary and affiliate of ActiveHours, Inc. and is also a Delaware corporation.[1] Its principal address is also 391 San Antonio Road, 3rd Floor, Mountain View, CA 94040. EarnIn US1 LLC registered to conduct

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(C). There are potentially millions of people in the Putative Class Members, the aggregated claims of the individual Class Members exceed the sum or value of $5,000,000 exclusive of interest and costs, and members of the proposed Class are citizens of states different from Defendant, including Plaintiff.

11.    This Court has personal jurisdiction over Defendant because Defendant operates, conducts, and engage in substantial business in this judicial district.

12.    Venue is proper in this District under 28 U.S.C. § 1391(a)(1) because Defendant's principal place of business is located in this District, Plaintiff resides in this District, and a substantial part of the events and omissions giving rise to this action occurred in this District.

## FACTUAL ALLEGATIONS

### Facts Related to the Data Breach

***Defendant's Business***

13.    EarnIn is an online application that provides cash advance services.

---

[1] Privacy Policy, EarnIn, https://www.earnin.com/privacy/full-privacy (last accessed Nov. 21, 2025) (stating that EarnIn US1 LLC is an "affiliate" of ActiveHours, Inc.).

14.     EarnIn boasts over 460,000 users have rated their application 5 stars and that over 19,000,000 people have downloaded their application.[2]

15.     One cash advance service is "Cash Out." Customers can get paid up to $1,000 per pay period during their pay period by EarnIn without waiting until their pay day.

16.     To get access to Cash Out, customers first provide PII to EarnIn to sign up for an account. Next, they link their bank account information to the EarnIn application. Then, they request a cash advance on the application and receive money into their bank account. Once they are paid, customers automatically repay the cash advance through their online bank account that is already linked with the application.[3] EarnIn earns money through fees if the customer wants expedited service, and "tips."

17.     Another cash advance service is "Live Pay." Here, customers provide work information and after receiving approval from EarnIn, they have access to their pay as they earn. "[I]nstead of your earnings updating daily, they rise every second of the workday," and made available on an ATM card called the EarnIn Card.[4] Customers can access up to $1,500 per pay period using this service for a recurring fee.

18.     EarnIn also provides other financial services such as "Early Pay," that allows EarnIn to receive direct deposit from the employer on the customer's behalf. Through Early Pay, EarnIn claims that customers can "[g]et paid up to 2 days early."[5] and then paying customers as soon as the direct deposit is received or 1-2 days after, credit monitoring, "Balance Shield,"[6] which alerts customers when their bank account is low, and a savings option.

---

[2] https://www.earnin.com/ (last accessed Nov. 21, 2025).

[3] Cash Out, EarnIn, https://www.earnin.com/products/cashout (last accessed Nov. 21, 2025).

[4] Live Pay, EarnIn, https://www.earnin.com/live-pay-on-earnin-card (last accessed Nov. 21, 2025).

[5] Early Pay, EarnIn, https://www.earnin.com/products/early-pay#footnote-1 (last accessed Nov. 21, 2025).

[6] Balance Shield, EarnIn, https://www.earnin.com/products/balance-shield (last accessed Nov. 21, 2025).

19.    EarnIn's services require its customers to entrust EarnIn with their sensitive PII. Customers must provide their name, address, date of birth, social security number, earnings information, and bank account information. Customers subscribed to the credit monitoring service would also give EarnIn access to all of their credit card numbers and balances.

20.    EarnIn's business model depends on Plaintiff and Class Members who are willing to trust them to protect their PII information. In return, EarnIn charges fees for its services and has access to highly sensitive and valuable PII.

*The Data Breach*

21.    On October 14, 2025, Defendant became aware of a cyber incident that disclosed customer PII to unauthorized entities.

22.    On November 12, 2025, EarnIn disclosed that its systems were compromised in a cyber incident to the Attorney General of Texas.[7]

23.    In the breach notification, EarnIn stated that they discovered on October 14, 2025 their system was compromised from April 2025 through October 15, 2025 (the "Data Breach"). On October 15, EarnIn claimed that it was able to secure the affected environment.

24.    According to EarnIn, the breach involved their system sending "encrypted personal information of Lead Bank customers to another one of our partner banks." "Lead Bank is one of our partner banks that supports Early Pay."

25.    EarnIn also stated that the results of their investigation showed that Plaintiff and Class Members' full names, dates of birth, addresses, and social security numbers were inadvertently disclosed.

*EarnIn's Security Representations*

26.    According to EarnIn's Privacy Policy, EarnIn collects PII and other sensitive information when the customer registers for an account, uses EarnIn's services, or communicates with EarnIn for purposes of obtaining its services.

---

[7] Data Security Breach Report, https://oag.my.site.com/datasecuritybreachreport/apex/ DataSecurityReportsPage (last accessed Nov. 21, 2025) (search criteria "EarnIn").

27.    In particular, customers may be asked to provide the following categories of personal information:[8]

    A.    "**Identifiers**, such as Your full name, alias, cell phone number, email, home address, proof of domicile, work address, date of birth, employer's name, SSN or Individual Taxpayer Identification Number ("TIN"), government identification number, Driver's License number or other state identification, and IP address. You may also choose to provide access to Your contacts' information as well."

    B.    "**Employment information**, such as Your employer's name and address, Your salary, and time and attendance."

    C.    "**Sensitive personal information**, such as SSN, Your account log-in, bank account information in combination with any required security or access code, password, or credentials* allowing access to the account, and device signals (GPS, Motion, Pedometer, Bluetooth, Wi-Fi)*."

28.    There are also additional PII and other sensitive personal information that EarnIn collects depending on whether they choose to receive marketing communications, or participate in other activities offered by EarnIn. EarnIn also collects PII and other sensitive information from its service providers, social media platforms, and marketing agencies.

29.    EarnIn made promises to keep Plaintiff's and Class Members' personal information safe. "Your Personal Information is protected by physical, electronic, and procedural safeguards in compliance with applicable US federal and state laws and regulations. We also use computer safeguards such as firewalls and data encryption and We enforce physical access controls to Our offices and files."[9]

30.    Further, in its short-form summary of customers' privacy rights, EarnIn states, "How does EarnIn protect my personal information? To protect your personal information from

---

[8] Privacy Policy, EarnIn, Sept. 15, 2025 https://www.earnin.com/privacy/full-privacy.
[9] *Id.*

unauthorized access and use, we use security measures that comply with industry standards. These measures include computer safeguards and secured files and buildings. We use computer safeguards such as firewalls and data encryption, we enforce physical access controls to our office and files, and we authorize access to Personal Information only for those employees and EarnIn agents who require it to fulfill their job or contractual responsibilities."[10]

***The Data Breach was Foreseeable***

31.    EarnIn was on notice that companies in the financial sector are susceptible targets for data breaches.

32.    According to the IBM Cost of a Data Breach 2025 report, the financial industry spent $6.08 million on average dealing with a data breach, the second highest amount not far behind the healthcare industry.[11]

33.    CrowdStrike, a cybersecurity company, also found that out of the twenty-three sectors that they analyzed, the financial sector was the second largest targeted sector.[12]

34.    It was foreseeable that EarnIn, as a financial service company that maintains PII for purposes of accessing customer bank accounts and direct deposits would be targeted by cyber intruders.

***EarnIn Derived a Benefit from its Security Representations***

35.    EarnIn obtained and stored a massive amount of PII and other sensitive financial and employment information. As a condition of engaging in financial services, EarnIn and its affiliates required that customers entrust them with highly confidential PII.

---

[10] Community Members Specific Privacy Rights – Short Privacy Notice, EarnIn, Aug. 7, 2025, https://www.earnin.com/privacy/short-privacy-notice (last accessed Nov. 21, 2025).

[11] IBM, Cost of a Data Breach 2025 12 (2025), https://www.ibm.com/reports/data-breach.

[12] CrowdStrike, 2025 Global Threat Report 21 (2025), https://go.crowdstrike.com/rs/281-OBQ-266/images/CrowdStrikeGlobalThreatReport2025.pdf?version=0 (last accessed Nov. 21, 2025).

36.     By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' PII, EarnIn assumed legal and equitable duties and knew or should have known that they were responsible for protecting Plaintiff's and Class Members' PII from disclosure.

37.     EarnIn's security representations further demonstrates that EarnIn knew about its legal obligations. These representations also imposed obligations on EarnIn to keep those promises.

38.     Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII. Plaintiff and Class Members relied on EarnIn to keep this information confidential and securely maintained, and to make only authorized disclosures of their PII.

*PII is Valuable and Subject to Unauthorized Disclosure*

39.     EarnIn was aware that PII collected by EarnIn is highly sensitive and of significant value to those who would use it for wrongful purposes.

40.     PII is a valuable commodity to identity thieves. As the FTC recognizes, identity thieves can use this information to commit an array of crimes including identify theft and financial fraud.[13] Indeed, a robust illegal market exists in which criminals openly post stolen PII on multiple underground websites, commonly referred to as the "dark web." Moreover, "fullz" packages, which include "extra information about [a] legitimate credit card owner in case" a scammer's "bona fides are challenged when they attempt to use the credit card" are also offered on the dark web.[14]

41.     Financial information is particularly valuable because criminals can use it to target victims with frauds and swindles that take advantage of the victim's financial conditions.

---

[13] Federal Trade Commission, What To Know About Identity Theft (available at https://consumer.ftc.gov/articles/what-know-about-identity-theft) (last accessed Nov. 13, 2025).

[14] Stolen PII & Ramifications: Identity Theft and Fraud on the Dark Web, Armor (Apr. 3, 2018), https://res.armor.com/resources/blog/stolen-pii-ramifications-identity-theft-fraud-   dark-web/ (last accessed Nov. 13, 2025).

42.     The ramifications of EarnIn's failure to keep Plaintiff's and Class Members' PII secure are long-lasting and severe. Once PII are stolen, fraudulent use of that information and damage to victims may continue for years. Fraudulent activity might not show up for months or even years thereafter.

43.     Further, criminals often trade stolen PII for years following a breach. Cybercriminals can post stolen PII on the internet, thereby making such information publicly available.

44.     EarnIn knew, or should have known, the importance of safeguarding PII entrusted to them and of the foreseeable consequences if their data security systems were breached. This includes the significant costs that would be imposed on Plaintiff and Class Members because of a breach. EarnIn failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring, which is evident from the fact that it took EarnIn seven (7) months to realize that there was a breach in its security systems.

<b>The Data Breach Exposed Plaintiff and Class Members<br/>to Identity Theft and Out-of-Pocket Losses</b>

45.     Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of their rights. They are incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

46.     Despite all the publicly available knowledge of known and foreseeable consequences of the disclosure of PII, EarnIn's policies and practices with respect to maintaining the security of Plaintiff's and Class Members' PII were reckless, or at the very least, negligent.

47.     In virtually all contexts, the expenditure of time has consistently been recognized as compensable, and for many people, it is the basis on which they are compensated. Plaintiff and Class Members should be compensated for the time they have expended because of EarnIn's misfeasance.

48.     Once PII is stolen, fraudulent use of that information and damage to victims may continue for years. Consumer victims of data breaches are more likely to become victims of identity fraud.[15]

49.     As a result of the wide variety of injuries that can be traced to the Data Breach, Plaintiff and Class Members have and will continue to suffer financial loss and other actual harm for which they are entitled to damages, including, but not limited to, the following:

      A.     invasion of privacy;

      B.     theft of their PII;

      C.     lost or diminished value of their PII;

      D.     lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach;

      E.     loss of the benefit of their bargain;

      F.     lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach;

      G.     statutory damages;

      H.     nominal damages; and

      I.     the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in EarnIn's possession and is subject to further unauthorized disclosures so long as EarnIn fails to undertake appropriate and adequate measures to protect the PII.

**EarnIn Violated FTC Guidelines**

50.     The Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, prohibited EarnIn from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain

---

[15]     2014 LexisNexis True Cost of Fraud Study (available at https://www.lexisnexis.com/risk/downloads/assets/true-cost-fraud-2014.pdf) (last accessed Nov. 13, 2025).

reasonable and appropriate data security for consumers' PII is an "unfair practice" in violation of the FTC Act. See, e.g., Fed. Trade Comm'n v. Wyndham Worldwide Corp., 799 F.3d 236 (3d Cir. 2015).

51.     The FTC has promulgated several guides for businesses that reflect the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[16]

52.     In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established data security guidelines for businesses.[17] The guidelines reflect that businesses should protect the PII that they keep; properly dispose of PII that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

53.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to confidential data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[18]

54.     The FTC has brought enforcement actions against businesses for failing to protect customer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

---

[16] Federal Trade Commission, Start With Security: A Guide for Business (available at https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf) (last accessed Nov. 13, 2025) ("Start With Security").

[17] Federal Trade Commission, Protecting Personal Information: A Guide for Business (available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf) (last accessed Nov. 13, 2025).

[18] Federal Trade Commission, *Start With Security*, *supra*.

55.    EarnIn failed to properly implement basic data security practices. EarnIn's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

56.    EarnIn was at all times fully aware of its obligation to protect Plaintiff's and Class Members' PII because of its position as a healthcare provider. EarnIn was also aware of the significant repercussions that would result from its failure to do so.

**Plaintiff's Experience**

57.    Plaintiff Coriah Welch has been an EarnIn customer both recently and at various times in past years. During the course of her dealings with EarnIn, she has given EarnIn her Social Security number, along with other sensitive personal information.

58.    EarnIn obtained Ms. Welch's PII in the course of conducting its regular business operations.

59.    At the time of the Data Breach, EarnIn retained Ms. Welch's PII.

60.    Ms. Welch greatly values her privacy and is very careful about sharing her sensitive PII. Ms. Welch diligently protects her PII and takes proactive steps to ensure that her PII are kept safe and secure, and stores any documents containing PII in a safe and secure location. Ms. Welch has never knowingly transmitted unencrypted sensitive PII over the Internet or any other unsecured source.

61.    EarnIn obtained and continues to maintain Ms. Welch's PII and has a continuing legal duty and obligation to protect that PII from unauthorized access and disclosure.

62.    The Data Breach has caused Ms. Welch to suffer imminent and impending injury arising from the substantially increased risk of additional future fraud, identity theft, and misuse resulting from her PII being placed in the hands of criminals.

63.    As a result of the Data Breach, Ms. Welch is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

64.    Ms. Welch has a continuing interest in ensuring that her PII, which, upon information and belief, remain backed up in EarnIn's possession, are protected and safeguarded from future breaches.

## CLASS ALLEGATIONS

65.    This civil action is properly maintainable as a class action pursuant to Rule 23 of the Colorado Rules of Civil Procedure. Plaintiff seeks certification of the following class:

All residents of the United States whose PII was compromised in the Data Breach.

66.    Excluded from the Class are EarnIn, any entity in which EarnIn has a controlling interest, and EarnIn's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class are any judicial officer presiding over this matter, members of their immediate family, and members of their judicial staff.

67.    Plaintiff reserves the right to modify or amend the definition of the proposed Class as additional information becomes available to Plaintiff.

68.    **Numerosity:** The Class Members are so numerous that individual joinder of all Class Members is impracticable. Upon information and belief, the number of individuals whose PII was exposed by EarnIn is at least in the tens of thousands. All Class Members' names and addresses are available from EarnIn's records, and Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods.

69.    **Commonality:** There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

      A.    Whether and to what extent EarnIn had a duty to protect the PII of Class Members;

      B.    Whether EarnIn was negligent in collecting and storing Plaintiff's and Class Members' PII;

      C.    Whether EarnIn had duties not to disclose the PII of Class Members to unauthorized third parties;

D.  Whether EarnIn took reasonable steps and measures to safeguard Plaintiff's and Class Members' PII;

E.  Whether EarnIn failed to adequately safeguard the PII of Class Members;

F.  Whether EarnIn failed to implement and maintain reasonable security policies and practices appropriate to the nature and scope of the PII compromised in the Data Breach;

G.  Whether EarnIn adequately, promptly, and accurately informed Plaintiff and Class Members that their PII had been compromised;

H.  Whether Plaintiff and Class Members are entitled to actual damages, statutory damages, and/or punitive damages because of EarnIn's wrongful conduct;

I.  Whether Plaintiff and Class Members are entitled to restitution because of EarnIn's wrongful conduct;

J.  Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and ongoing harm they face because of the Data Breach; and

K.  Whether Plaintiff and Class Members are entitled to identity theft protection for their respective lifetimes.

70.  **Typicality:** Plaintiff's claims are typical of those of other Class Members because Plaintiff's PII, like that of every other Class Member, was disclosed by EarnIn. Plaintiff's claims are typical of those of the other Class Members because, *inter alia*, all Class Members were injured through EarnIn's common misconduct. Plaintiff is advancing the same claims and legal theories individually and on behalf of all other Class Members, and there are no defenses that are unique to Plaintiff. Plaintiff's claims and Class Members' claims arise from the same operative facts and are based on the same legal theories.

71.  **Adequacy:** Plaintiff is an adequate representative of the Class because Plaintiff is a member of the Class and is committed to pursuing this matter against EarnIn to obtain relief for the Class. Plaintiff has no conflicts of interest with the Class. Plaintiff's counsels are competent

and experienced in litigating class actions, including extensive experience in data breach

litigation. Plaintiff intends to vigorously prosecute this case and will fairly and adequately

protect the Class's interests.

72.    **Policies Generally Applicable to the Class:** This class action is also appropriate

for certification because EarnIn has acted or refused to act on grounds generally applicable to the

Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards

of conduct toward the Class Members, and making final injunctive relief appropriate with respect

to the Class as a whole. EarnIn's policies challenged herein apply to and affect Class Members

uniformly and Plaintiff's challenge of these policies hinges on EarnIn's conduct with respect to

the Class as a whole, not on facts or law applicable only to Plaintiff.

73.    **Superiority:** Class litigation is an appropriate method for fair and efficient

adjudication of the claims involved. Class action treatment is superior to all other available

methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a

large number of Class Members to prosecute their common claims in a single forum

simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and

expense that hundreds of individual actions would require. Class action treatment will permit the

adjudication of relatively modest claims by certain Class Members, who could not individually

afford to litigate a complex claim against large corporations, like EarnIn. Even for those Class

Members who could afford to litigate such a claim, it would still be economically impractical

and impose a burden on the courts.

74.    The nature of this action and the nature of laws available to Plaintiff and Class

Members make the use of the class action device a particularly efficient and appropriate

procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because EarnIn

would necessarily gain an unconscionable advantage in non-class litigation, since EarnIn would

be able to exploit and overwhelm the limited resources of each individual Class Member with

superior financial and legal resources; the costs of individual suits could unreasonably consume

the amounts that would be recovered; proof of a common course of conduct to which Plaintiff

were exposed is representative of that experienced by Class Members and will establish the right

of each Class Member to recover on the causes of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

75.    The litigation of Plaintiff's claims is manageable. EarnIn's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with maintenance of this lawsuit as a class action.

76.    Adequate notice can be given to Class Members directly using information maintained in EarnIn's records.

77.    Unless a class-wide injunction is issued, EarnIn may continue to maintain inadequate security with respect to the PII of Class Members, EarnIn may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and EarnIn may continue to act unlawfully as set forth in this Complaint.

78.    EarnIn has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate.

**FIRST CLAIM FOR RELIEF**
**NEGLIGENCE**
**(on behalf of Plaintiff and the Class)**

79.    Plaintiff re-alleges and incorporates by reference herein all the allegations contained in the preceding paragraphs.

80.    The risk that unauthorized persons would attempt to gain access to the PII and misuse it was foreseeable. As EarnIn stores vast amounts of PII, it was inevitable that unauthorized individuals would attempt to access EarnIn's databases, whether by malware or otherwise.

81.    PII is highly valuable, and EarnIn knew, or should have known, the risk in obtaining, using, handling, emailing, and storing Plaintiff's and Class Members' PII and the importance of exercising reasonable care to those ends.

82. EarnIn owed, and continues to owe, a duty of care to Plaintiff and Class Members to exercise reasonable and due care in obtaining, processing, retaining, securing, safeguarding, deleting, and protecting Plaintiff's and Class Members' PII in its possession from being compromised, lost, stolen, accessed, or misused by unauthorized persons. More specifically, this duty included, among other things: (a) designing, maintaining, and testing EarnIn's security systems to ensure that Plaintiff's and Class Members' PII in EarnIn's possession was adequately secured and protected; (b) implementing processes that would detect a breach of its security system in a timely manner; (c) timely acting upon warnings and alerts, including those generated by its own security systems, regarding intrusions to its networks; and (d) maintaining data security measures consistent with industry standards.

83. EarnIn had a common law duty to prevent foreseeable harm to its customers. This duty existed because Plaintiff and class members were the foreseeable and probable victims of any inadequate security practices. In fact, not only was it foreseeable that Plaintiff and Class Members would be harmed by the failure to protect their PII because hackers routinely attempt to steal such information and use it for nefarious purposes, but EarnIn also knew that it was more likely than not Plaintiff and Class Members would be harmed.

84. It was also foreseeable that EarnIn's failure to adequately safeguard their PII in accordance with industry standards for data security would result in the compromise of that PII. EarnIn acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and Class Members' PII by disclosing and providing access to this information to third parties and by failing to properly supervise both the way the PII were stored, used, and exchanged, and those in its employ who were responsible for those actions.

85. EarnIn owed to Plaintiff and Class Members a duty to notify them within a reasonable timeframe of any breach to the security of their PII. EarnIn also owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and occurrence of the Data Breach. This duty is directed at enabling Plaintiff and Class Members to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and take other steps to mitigate the harm caused by the Data Breach.

86.    Timely notification was required, appropriate, and necessary so that, among other things, Plaintiff and class members could take appropriate measures to freeze or lock their credit profiles, avoid unauthorized charges to their credit or debit card accounts, cancel or change usernames and passwords on compromised accounts, monitor their account information and credit reports for fraudulent activity, contact their banks or other financial institutions that issue their credit or debit cards, obtain credit monitoring services, and take other steps to mitigate or ameliorate the damages caused by EarnIn's misconduct.

87.    EarnIn owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom EarnIn knew or should have known would suffer injury-in-fact EarnIn as a result of EarnIn's inadequate security protocols. EarnIn actively sought and obtained Plaintiff's and Class Members' PII.

88.    EarnIn breached the duties it owed to Plaintiff and class members described above and thus was negligent. EarnIn breached these duties by, among other things, failing to: (a) exercise reasonable care and implement adequate security systems, protocols and practices sufficient to protect Plaintiff's and Class Members' PII; (b) detect the breach while it was ongoing; (c) maintain security systems consistent with industry standards; and (d) disclose in a timely fashion that Plaintiff's and the Class Members' PII in EarnIn's possession had been or was reasonably believed to have been, stolen or compromised.

89.    As a direct and traceable result of EarnIn's negligence and/or negligent supervision, Plaintiff and Class Members have suffered and will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

90.    EarnIn's breach of its common-law duties to exercise reasonable care and negligence actually and proximately caused Plaintiff's and Class Members' actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from

and were caused by EarnIn's negligence. Those injuries-in-fact and damages are ongoing, imminent, immediate, and Plaintiff and Class Members continue to face them.

91.    As a direct and proximate result of EarnIn's negligence, Plaintiff and Class Members have been injured as described herein, and are entitled to damages in an amount to be proven at trial. Plaintiff and Class Members injuries include, but are not limited to, the following:

    a.   losing the inherent value of their PII;

    b.   losing the value of the explicit and implicit promises of data security;

    c.   identity theft and fraud resulting from the theft of their PII;

    d.   costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

    e.   costs associated with purchasing credit monitoring, credit freezes, and identity theft protection services;

    f.   Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

92.    Plaintiff and Class Members are also entitled to injunctive relief requiring EarnIn to: (1) strengthen its data security systems and monitoring procedures; (2) submit to future annual audits of those systems and monitoring procedures; and (3) provide adequate credit monitoring to all Class Members.

<u>**SECOND CLAIM FOR RELIEF**</u>
**NEGLIGENCE PER SE**
**(on behalf of Plaintiff and the Class)**

93.    Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

94.    Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the Federal Trade Commission ("FTC"), the unfair act or practice by companies such as EarnIn of failing to use reasonable measures to protect PII.

95.     EarnIn also had a duty under FTC Act, 15 U.S.C. § 45 to provide adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PII.

96.     Plaintiff and Class Members are consumers within the class of persons Section 5 of the FTC Act (and similar state statutes) was intended to protect.

97.     EarnIn had a duty to Plaintiff and Class Members to implement and maintain reasonable security procedures and practices to safeguard Plaintiff's and Class Members' PII.

98.     EarnIn violated Section 5 of the FTC Act (and similar state statutes) by failing to use reasonable measures to protect PII and not complying with industry standards. EarnIn's conduct was particularly unreasonable given the nature and amount of PII obtained and stored and the foreseeable consequences of a data breach on its systems, and EarnIn's experience with previous breaches.

99.     EarnIn breached their duty to Plaintiff and Class Members under the FTC Act by failing to provide reasonable or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PII.

100.    The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of its failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and Class Members.

101.    But for EarnIn's wrongful and negligent breach of duty owed to Plaintiff and Class Members, Plaintiff and Class Members would not have been injured.

102.    The injury and harm suffered by Plaintiff and Class Members were the reasonably foreseeable result of EarnIn's breach of its duty. EarnIn knew or should have known that EarnIn was failing to meet its duties and that the breach would cause Plaintiff and Class Members to suffer the foreseeable harms associated with the exposure of their PII.

103.    EarnIn's violation of Section 5 of the FTC Act (and similar state statutes) constitutes negligence per se.

104.    As a direct and proximate result of EarnIn's negligence per se, Plaintiff and Class Members have suffered harm, including:

A.    losing the inherent value of their PII;

B.    losing the value of the explicit and implicit promises of data security;

C.    identity theft and fraud resulting from the theft of their PII;

D.    costs and time associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

E.    costs and time associated with purchasing credit monitoring, credit freezes, and identity theft protection services;

F.    unreimbursed losses relating to fraudulent charges;

G.    losses relating to exceeding credit and debit card limits and balances; harm resulting from damaged credit scores and information; and

H.    other harm resulting from the unauthorized use or threat of unauthorized use of stolen PII, entitling them to damages in an amount to be proven at trial.

105.    Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

106.    Plaintiff and Class Members are also entitled to injunctive relief requiring EarnIn to: (1) strengthen its data security systems and monitoring procedures; (2) submit to future annual audits of those systems and monitoring procedures; and (3) provide adequate credit monitoring to all Class Members.

**THIRD CLAIM FOR RELIEF**
**Breach of Implied Contract**
**(on behalf of Plaintiff and the Class)**

107.    Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

108.    EarnIn offered medical services to Plaintiff and Class Members. Then, Plaintiff and Class Members accepted EarnIn's services and paid for those services. And when Plaintiff and Class Members paid for the services, they also provided their PII to EarnIn.

109.    Thus, Plaintiff and Class Members entered implied contracts with EarnIn. And so, each paid service before and during the Data Breach was made under these mutually agreed-upon implied contracts with EarnIn.

110.    Under those implied contracts, EarnIn agreed to safeguard and protect such information and to timely and accurately notify Plaintiff and Class Members if their information was compromised or stolen.

111.    Plaintiff and Class Members would not have provided and entrusted their PII to EarnIn in the absence of an implied contract.

112.    EarnIn materially breached the contracts it entered with Plaintiff and Class Members by:

        A.    Failing to safeguard and protect the PII of Plaintiff and Class Members.

        B.    Failing to promptly notify Plaintiff and Class Members of the Data Breach and the subsequent exposure and theft of their PII.

        C.    Failing to comply with industry standards as well as legal obligations that are necessarily incorporated into the parties' agreement.

        D.    Failing to ensure the confidentiality and integrity of the electronic PII that EarnIn created, maintained, received, and transmitted.

113.    The damages sustained by Plaintiff and Class Members as described above were the direct and proximate result of EarnIn's material breaches of its agreements.

114.    Plaintiff and Class Members performed as required under the relevant agreement, or EarnIn's conduct resulted in the waiver of such performance.

115.    All contracts include the covenant of good faith and fair dealing. Thus, all contracts impose on each party a duty of good faith and fair dealing. That duty encompasses the following:

        A.    The parties must act with honesty in fact in the conduct or transactions concerned.

B.     The parties must act with good faith and fair dealing when executing contracts and discharging performance and other duties according to their terms so as to preserve the spirit, and not merely the letter, of the bargain.

C.     The parties are mutually obligated to comply with both the substance and form of their contracts.

116.    Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct is justified. Bad faith may be overt or may consist of inaction. And fair dealing may require more than honesty.

117.    In this case, EarnIn failed to advise Plaintiff and Class Members of the Data Breach promptly. In these and other ways, EarnIn violated its duty of good faith and fair dealing.

118.    EarnIn, through numerous material breaches of the implied contracts, injured both Plaintiff and Class Members and sustained actual losses and damages as described above, including that they did not get the benefit of the bargain for which they paid for.

**FOURTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(on behalf of Plaintiff and the Class)**

119.    Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

120.    This claim is pled in the alternative to Plaintiff's claim for breach of implied contract.

121.    Plaintiff and Class Members conferred benefits upon EarnIn in the form of payments. In addition, EarnIn benefitted from receiving Plaintiff's and Class Members' PII and from its ability to retain and use that information. Such data is used to facilitate both payment and the provision of services. For instance, by retaining Plaintiff's and Class Members' PII, EarnIn could offer continued service for a patient visiting more than one time, and not have to ask patients to provide medical history information over and over again. This time saving measure creates additional value for patients and incentivizes them to use EarnIn's services again.

122.    EarnIn also understood and appreciated that Plaintiff's and Class Members' PII was private and confidential and its value depended upon EarnIn maintaining its privacy and confidentiality.

123.    EarnIn appreciated or knew of the benefits that it received. Under principles of equity and good conscience, the Court should not allow EarnIn to retain the full value of these benefits, specifically, Plaintiff's and Class Members' payments and PII.

124.    But for EarnIn's willingness and commitment to maintain its privacy and confidentiality, that PII would not have been transferred to and entrusted to EarnIn. Further, if EarnIn had disclosed that its data security measures were inadequate, EarnIn would not have been permitted to continue in operation by regulators and its customers.

125.    As a result of EarnIn's wrongful conduct as alleged in this Complaint (including, among things, its knowing failure to employ adequate data security measures, its continued maintenance and use of the PII belonging to Plaintiff and Class Members without having adequate data security measures, and its other conduct facilitating the theft of that PII), EarnIn has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and Class Members. EarnIn continues to benefit and profit from its retention and use of the PII while its value to Plaintiff and Class Members has been diminished.

126.    EarnIn's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the compiling and use of Plaintiff's and Class Members' PII, while at the same time failing to maintain that information secure from intrusion and theft by hackers and identity thieves.

127.    Under the common law doctrine of unjust enrichment, it is inequitable for EarnIn to be permitted to retain the benefits it received, and is still receiving, without justification, from Plaintiff and Class Members in an unfair and unconscionable manner. EarnIn's retention of such benefits under circumstances making it inequitable to do so constitutes unjust enrichment.

128.    The benefit conferred upon, received, and enjoyed by EarnIn was not conferred officiously or gratuitously, and it would be inequitable and unjust for EarnIn to retain the benefit.

129.    EarnIn is therefore liable to Plaintiff and Class Members for restitution in the amount of the benefit conferred on EarnIn as a result of its wrongful conduct, including specifically the value to EarnIn of the PII that was stolen in the Data Breach and the profits EarnIn is receiving from the use of that information.

130.    EarnIn should be compelled to disgorge into a common fund, for the benefit of Plaintiff and Class Members, all funds that it unlawfully or inequitably EarnIn obtained as a result of its misconduct and the resulting Data Breach.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiff, individually and on behalf of all others similarly situated, prays for relief as follows:

a.    for an Order certifying the Class as defined herein, and appointing Plaintiff and her counsel to represent the Class;

b.    for equitable relief enjoining EarnIn from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' PII, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class Members;

c.    for equitable relief compelling EarnIn to use appropriate cybersecurity methods and policies with respect to PII collection, storage, and protection, and to disclose with specificity to Class Members the types of PII compromised;

d.    for an award of damages, including actual, nominal, consequential, enhanced compensatory, and punitive damages, as allowed by law in an amount to be determined;

e.    for an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

f.    for prejudgment interest on all amounts awarded; and

g.    such other and further relief as this Court may deem just and proper.

1

**DEMAND FOR JURY TRIAL**

2

Plaintiff hereby demands a trial by jury on all issues so triable.

3

4

Dated: November 21, 2025                    Respectfully submitted,

5                                           */s/ Jonathan R. Marshall*
                                            Jonathan R. Marshall
6                                           **BAILEY GLASSER LLP**
                                            580 California Street, 12th Floor
7                                           San Francisco, CA  94104
                                            (304) 345-6555
8                                           jmarshall@baileyglasser.com

9                                           Bart D. Cohen (*pro hac vice* forthcoming)
                                            Panida A. Anderson (*pro hac vice* forthcoming)
10                                          **BAILEY & GLASSER LLP**
                                            1055 Thomas Jefferson Street NW, Suite 540
11                                          Washington, DC 20007
                                            (202) 463-2101
12                                          bcohen@baileyglasser.com
                                            panderson@baileyglasser.com
13

14                                          *Counsel for Plaintiff and the Proposed Class*

15

16

17

18

19

20

21

22

23

24

25

26

27

28